IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORGAN CHARLES PHILLIPS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-177-E ) |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security,* | ) ) ) |
| Defendant. | ) ) |

O R D E R

AND NOW, this 25th day of March, 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 20) filed in the above-captioned matter on July 30, 2021,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 18) filed in the above-captioned matter on July 16, 2021,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.      **Background**

Plaintiff Morgan Charles Phillips protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, effective October 22, 2016, claiming that he became disabled on September 2, 2014, due to back injury, depression, chronic leg pain, Chiari malformation, sinus polyp, chronic sinus infections. Migraines, weight gain, and immuno-deficiency.  (R. 15, 167-68, 193, 197).[1]  After being denied initially on June 29, 2017, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on January 10, 2019.  (R. 15, 94-98, 99-100, 34-68).  In a decision dated March 29, 2019, the ALJ denied Plaintiff's request for benefits.  (R. 15-29).  The Appeals Council declined to review the ALJ's decision on May 8, 2020.  (R. 1-3).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of

---

[1]     Plaintiff appears to have at least attempted to also file a claim for Supplemental Security Income ("SSI") benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381, *et seq.* However, his claim for SSI benefits was denied on November 24, 2016, because his resources exceeded the allowable limit.  (R. 84-93).  Neither the ALJ nor Plaintiff reference any claim under Subchapter XVI, and the Court therefore makes no findings relevant to any such claim.

fact to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial

gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R.

4

§ 404.1545(a).  At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work.  *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience.  *See id.*  The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled.  *See* 20 C.F.R. § 404.1523.

**III.    The ALJ's Decision**

In his March 29, 2019 decision, the ALJ found that Plaintiff met the insured requirements of the Act through June 30, 2017.  (R. 17).  The ALJ then proceeded to apply the sequential evaluation process.  In particular, he found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of September 2, 2014.  (R. 18).  The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe impairments, including Arnold-Chiari malformation resulting in headaches, chronic sinusitis, degenerative disc disease, blindness in the right eye, asthma, depression, hearing loss with no hearing aids, gastrointestinal reflux disease, and obesity.  (*Id.*).  The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three.  (R. 18-20).

The ALJ found that Plaintiff retained the RFC to perform light work, but with the following non-exertional limitations:

> The claimant is limited to occasional bending, balancing, twisting, squatting, kneeling, crawling, [and] climbing but no climbing of ropes, scaffolds, or ladders. The claimant should avoid hazards such as heights, vibration, [and] dangerous machinery, but he is okay for driving. The claimant needs an environment free from concentrated poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes. The claimant is blind in the right eye. The claimant is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public and occasional interaction with the public, coworkers, and supervisors.

(R. 20-26). In so finding, he specifically gave great weight to the medical opinion of Justine Magurno, M.D. (R. 26). The ALJ used a vocational expert ("VE") to determine that Plaintiff was not capable of performing his past relevant work at Step Four of the process. (R. 26-27). The ALJ promulgated several hypothetical questions to the VE at Step Five to determine whether there were other jobs Plaintiff could perform, setting forth different combinations of functional limitations. (R. 61-65). In response to the question setting forth the limitations ultimately included in the RFC, the VE testified that Plaintiff could perform the occupations of laundry folder, garment folder, and bakery worker. (R. 28, 63). Accordingly, the ALJ found that Plaintiff could do jobs that exist in significant numbers in the national economy and that he, therefore, was not disabled. (R. 28-29).

## IV. Legal Analysis

Plaintiff raises two primary arguments, the first being that the ALJ inadequately addressed all of the record evidence in formulating the RFC and hypothetical questions to the VE. While the Court does not agree with all of Plaintiff's contentions in this regard, it does agree that the ALJ's consideration of Plaintiff's headaches was insufficient under the

circumstances.  Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence, and it will therefore remand for further consideration and discussion.

As noted above, RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments.  *See Fargnoli*, 247 F.3d at 40.  *See also* 20 C.F.R. § 404.1545(a)(1).  Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'"  *Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 704).  "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'"  *Id.* (quoting *Cotter*, 642 F.2d at 705).  *See also* SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").  Vocational testimony based on an inadequate RFC cannot be considered as substantial evidence supporting an ALJ's disability determination.  *See Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

While the ALJ's RFC findings here certainly contained a narrative discussion of the evidence, it is not clear from that narrative how, if at all, he accounted for Plaintiff's headaches in formulating the RFC and corresponding hypothetical questions.  Although the ALJ found Plaintiff's Arnold-Chiari malformation resulting in headaches to be a severe impairment, he only mentioned these headaches in passing in his discussion as to how he crafted the RFC.  Moreover, although the ALJ gave "great weight" to the opinion of Dr. Magurno, one of the consultative examiners in this matter (R. 26), he did not address the portion of Dr. Magurno's opinion that

directly referred to Plaintiff's headaches. As Plaintiff points out, when directed to "State any other work-related activities which are affected by any impairments, and indicate how the activities are affected," Dr. Magurno identified marked scheduling difficulties caused by, *inter alia*, Plaintiff's headaches and fatigue. (R. 810). The March 29 decision simply does not address this aspect of the consultative examiner's opinion.

Given the significant weight given to Dr. Magurno's opinion, it is problematic that no mention was made as to Plaintiff's apparent difficulties in maintaining a schedule in the ALJ's decision. This is particularly true considering that the narrative does not otherwise address the way in which the RFC accounted for Plaintiff's headaches. As Plaintiff points out, the record certainly contains enough evidence that Plaintiff suffered from severe headaches (R. 51, 247, 251, 271, 368. 410-21) to warrant a more focused discussion as to the functional limitations caused by this condition, if any, in light of Dr. Magurno's opinion.

The Court further notes that an important part of formulating the proper RFC is determining whether a claimant has the ability to perform at the level suggested by the RFC on a regular basis so as to allow him to work a regular work schedule. Indeed, the RFC is "an assessment of an individual's ability to do sustained work-related physical and mental work activities in a work setting on a regular and continuing basis." SSR 96-8p, at *1. This, in turn, generally requires the ability to engage in work-related activity 8 hours a day, for 5 days a week, or an equivalent schedule. *See id.* The mere fact that a claimant "can perform the range of work required in particular jobs that exist in the local or national economy does not mean that she can perform the work 'on a regular and continuing basis.'" *Wallace v. Apfel*, No. 97-6912, 1998 WL 967376, at *4 (E.D. Pa. Nov. 24, 1998) (quoting SSR 96-8p). An ALJ must also determine that the claimant can perform these jobs 8 hours a day, for 5 days a week, or the equivalent. *See id.*

*See also Kangas v. Bowen*, 823 F.2d 775, 777-78 (3d Cir. 1987).  As noted, Dr. Magurno's opinion suggested that Plaintiff may have difficulties working a regular schedule due to his headaches and fatigue, among other things.  The ALJ, on remand, should clarify what effects, if any, Plaintiff's headaches have on his ability to sustain a normal work schedule.  The Court is not suggesting any specific findings that the ALJ needs to make in regard to Plaintiff's headaches, nor is it necessarily stating that additional restrictions need to be included in the RFC.  It is the need for additional explanation by the ALJ that necessitates a remand in this case.[2]  The Court must always ensure that the ALJ did not "reject evidence for no reason or for the wrong reason," *Cotter*, 642 F.2d at 706, and more discussion by the ALJ is needed to persuade the Court that he has properly addressed Plaintiff's headaches in adjudicating this matter.

The Court does not reach Plaintiff's second argument – that the vocational testimony in this case was defective.  It does, however, note that the ALJ, in his decision, stated that he "specifically questioned the vocational expert whether her testimony was consistent with the [Dictionary of Occupational Titles ("DOT")] per SSR 00-4p, to which the vocational expert testified that her testimony was consistent."  (R. 28).  A review of the transcript of the administrative hearing shows that no such questioning occurred.  On remand, the ALJ should make sure that the hypothetical question(s) to the VE are accurate and induce testimony and/or other evidence as to the consistency of the VE's testimony with the DOT as required by SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

---

2    As such, the record does not permit the Court to reverse and remand the case for an award of benefits. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## V.      Conclusion

Accordingly, the Court remands this matter for further consideration of Plaintiff's RFC and the hypothetical question to the VE, including further analysis of the impact of Plaintiff's headaches and any related conditions.  As noted, although the Court does not reach the other issues raised by Plaintiff, the Commissioner should be conscious of those concerns on remand.

s/Alan N. Bloch
United States District Judge

ecf:          Counsel of record